UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ROBERTO A. MORELL,

                              Plaintiff,

          -against-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

-----------------------------------------------------------------X

22-CV-06660 (SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Roberto Morell seeks judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. See 42 U.S.C. § 405(g). Morell moved, and the Commissioner cross-moved, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner's motion is GRANTED, and Morell's motion is DENIED.

## BACKGROUND

**I.    Administrative History**

Morell applied for DIB and SSI[1] on January 22, 2019. ECF No. 18, Administrative Record ("R.") 111, 133. He alleges he was disabled beginning July 25, 2018, due to heart problems, type two diabetes, high blood pressure, back problems, leg pain, and depression. R. 92. His application was first denied on June 25, 2019, and then again upon reconsideration on July 12, 2019. R. 170, 192. Morell then requested a hearing before an administrative law judge

---

[1] Accordingly, all citations to 20 C.F.R. § 404 should be read to include the corresponding regulations in 20 C.F.R. § 416.

("ALJ") to review his case. R. 216. Morell appeared before ALJ Angela Banks for a hearing on December 9, 2019. R. 45-63. The ALJ issued a decision denying the claim on February 26, 2020. R. 135. Morell requested review of the ALJ's decision by the Appeals Council, and on December 28, 2020, the case was remanded for a new hearing and decision. R. 158-61. Morell appeared before the ALJ again on June 16, 2021, and on July 21, 2021, the ALJ again issued a decision denying the claim. R. 64-90, 13-40. On June 22, 2022, the Appeals Council denied Morell's request for review, making the ALJ's decision final. R. 1.

**II.      Morell's Civil Case**

Morell filed his complaint on August 8, 2022, seeking review of the ALJ's decision. See ECF No. 1. He requests that the Court vacate the decision and award him benefits or, in the alternative, remand the case for further proceedings. ECF No. 24, Plaintiff's Memorandum of Law ("Pl. Br.") at 27. The Commissioner answered by filing the administrative record, and the parties cross-moved for judgment on the pleadings. See ECF Nos. 18, 24, 27. Morell argues that the ALJ erred by improperly weighing the medical opinion evidence when determining his Residual Functional Capacity ("RFC"), improperly finding at Step Two that his mental impairments were non-severe, and by improperly discrediting his testimony concerning the intensity, persistence, and limiting effects of his symptoms. Pl. Br. at 10, 17, 23. The Commissioner responds that the ALJ's decision was supported by substantial evidence and that she properly evaluated the medical opinion evidence, the severity of Morell's impairments, and Morell's testimony. See ECF No. 28, Defendant's Memorandum of Law ("Def. Br.") at 15, 23, 28.

On August 29, 2022, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 16.

**III.     Factual Background**

Morell was born in 1976 and was 42 years old at the time of the alleged onset of his disability in 2018. R. 369. He has a sixth-grade education and worked as a truck driver from 2000 to 2018. R. 448.

**A.     Medical Evidence (Physical)**

**1.     Dr. Anna Kezerashvili**

Morell was hospitalized on July 25, 2018, after "driving and almost crash[ing] as he felt severely dizzy." R. 1226; see also R. 656. Morell saw Dr. Anna Kezerashvili on September 5, 2018, and complained of chest pain with walking and exertion, dizziness, and syncope. R. 1226-27. Notes from that visit indicate that during his prior hospitalization Morell received lab work as well as a "very abnormal ECG." Id. Dr. Kezerashvili diagnosed Morell with hypertension, diabetes, elevated cholesterol, dyspnea on exertion, peripheral arterial disease, claudication, and chest pain, and prescribed Lisinopril. Id. Morell returned for testing the following day, and again on September 19, 2018, for a follow-up visit. R. 1223-24, 1221-22. At that visit Morell reported daily chest pain, shortness of breath after walking two to three blocks, occasional dizziness, palpitations, and mild claudication. R. 1221. Dr. Kezerashvili made a further diagnosis of minimal carotid disease and observed that Morell's diabetes was "very uncontrolled." R. 1222.

Morell continued to visit Dr. Kezerashvili through September 25, 2019, and on April 27, 2021, she completed a cardiac impairment questionnaire. R. 1172. Dr. Kezerashvili reported that Morell's symptoms—which occurred daily and which he had complained of for about a year—included chest pain, dizziness, weakness, fatigue, palpitations, and shortness of breath. Id. She also reported that Morell suffered from mild heart changes due to high blood pressure, and that Morell was not a malingerer. R. 1173. Dr. Kezerashvili opined that Morell was not able to work

3

due to his dizziness and imbalance, that he would need to lie down or rest between two to three times for 20-25 minutes in a workday, and that he was likely to be absent from work more than three times per month. R. 1174. She further opined that Morell could sit and stand/walk for no more than two hours in a workday and that he could lift only five pounds. Id.

    2.    **Dr. Eliscer Guzman**

Morell began treating with Dr. Guzman on October 22, 2019. R. 1454. At that visit he complained of oppressive chest pain, shortness of breath, dizziness, severe snoring, and intermittent claudication. Id. Dr. Guzman diagnosed hypertension, chest pain, palpitations, dyspnea, type 2 diabetes, and hyperlipidemia, ordered lab work and further testing, and prescribed multiple medications. R. 1455.

Morell continued to be treated by Dr. Guzman through February 4, 2021. R. 1373. At that time, he continued to complain of shortness of breath when walking short distances, as well as intermittent claudication. Id. He denied chest pain, palpitations, dizziness, syncope, and fever, and continued to be prescribed medication for his hypertension, diabetes, and hyperlipidemia. R. 1374.

    3.    **Dr. Daniel Schwartz**

On May 15, 2019, Morell was evaluated by SSA consultative physician Daniel Schwartz. R. 609. Morell reported a history of chronic lower back pain, depression, diabetes, hypertension, and heart palpitations. Id. Morell reported that he showered and dressed himself daily, but that his wife supervised him in the bathroom in case of dizziness, and that his family and home health assistant took care of all cooking, cleaning, laundry, and shopping. R. 610.

Dr. Schwartz's physical exam revealed unremarkable findings, including normal heart and lung exams, a normal gait, no need for an assistive device, and full strength and range of

motion. R. 611. Dr. Schwartz opined that Morell possessed moderate restrictions in heavy lifting and carrying, and mild limitations in his ability to sit, stand, walk, kneel, squat, and push or pull objects. R. 612.

### B. Medical Evidence (Mental)

#### 1. Dr. Angel Alcantara

Morell was evaluated by psychiatrist Dr. Alcantara on January 2, 2019. R. 759. He reported feeling mildly depressed with difficulty sleeping, which he attributed to ruminating about his physical condition, job status, and financial hardship. Id. He also complained of low energy, crying spells, difficulty concentrating, and anxiety about the potential of passing out due to his uncontrolled blood sugar. Id. Dr. Alcantara noted that Morell has no psychiatric history. Id. Upon examination, Dr. Alcantara found that Morell appeared unhappy and anxious, with signs of moderate depression, and recorded a rule out diagnosis of adjustment disorder with mixed anxiety and depressive mood. R. 760. Dr. Alcantara prescribed melatonin and an SSRI. R. 761.

At his next visit on February 1, 2019, Morell reported improvement in his mood and sleep, but remained depressed and worried about his health problems. R. 575. On February 27, 2019, Morell reported that his mood continued to improve, and that his diabetes was under better control. R. 572. Morell presented similarly at visits on March 22, and July 11, and was also prescribed trazadone. R. 570, 830.

Morell continued to be seen by Dr. Alcantara through April 20, 2021. R. 1466. Visit notes from that date describe a history of persistent depressive disorder and comorbid generalized anxiety disorder. Id. He reported a less severely depressed mood but low interest in his regular activities. Id. Upon examination, he presented as moderately depressed and anxious. R. 1467. His medication remained consistent. R. 1468.

### 2. Dr. Arlene Broska

On May 15, 2019, Morell was evaluated by SSA consultative psychologist Arlene Broska. R. 1060. Morell reported sleeping better with medication but that he had poor appetite, felt down every day, and felt "ashamed because he is not able to do much." Id. Dr. Broska noted self-isolation and anxiety. Id. He reported dressing, bathing, and grooming himself, shopping with assistance, and that his wife or home health aide completed activities of daily living. R. 1062. Dr. Broska stated that the results of her examination were "inconclusive," and that Morell's responses to mental status testing "lacked effort" and were inconsistent with his educational attainment. R. 1061. She concluded that Morell's level of intellectual functioning was "below-average." Id.

Dr. Broska opined that, vocationally, Morell had no limitations in understanding, remember, or applying simple direction or instructions, but mild limitations for complex direction or instructions. R. 1062. She noted no limitations using reason and judgment for work-related decisions, but mild limitations interacting adequately with supervisors, coworkers, and the public, as well as with sustaining concentration, performing a task at a consistent pace, sustaining an ordinary routine and regular attendance. Id. Dr. Broska further opined that Morell possessed mild to moderate limitations in regulating emotions, controlling behavior, and maintaining wellbeing, but no limitations in maintaining personal hygiene and appropriate attire and in having an awareness of normal hazards and taking appropriate precautions. Id. Dr. Broska concluded that Morell's limitations were caused by depression but were not significant enough to interfere with his ability to function on a daily basis. Id.

### C. Morell's Testimony

Morell testified that despite a year of daily insulin treatment, his diabetes remained uncontrolled. R. 49. He reported having multiple daily headaches up to an hour in duration in response to his insulin wearing off. R. 49-50. He reported having elevated and uncontrolled blood pressure and cholesterol, episodes of dizziness and sweatiness, and foot pain. R. 50-51, 74-75. He also reported trouble sleeping and "excruciating pain" from his weekly injections. R. 52-53.

Morell testified that he lives with his wife and daughter, and that a home attendant comes for 11 hours a week. R. 51. The home attendant accompanies him to appointments and on errands. He has fallen due to dizziness and for that reason requires his wife's help to bathe. R. 53. He does not do any household chores. R. 77. He reported using a cane for roughly six months, and that he is able to walk for only about three blocks. R. 53-54. He reported a need to alternate between sitting and standing every 20 minutes. R. 57. He has had equipment installed in his home to accommodate his balance issues and uses a CPAP machine. R. 73-74. He also monitors his blood sugar and pressure at home. R. 74.

Morell testified that he suffers from depression and anxiety "a lot." R. 51-52. He stated: "I feel empty, I feel nervous, I start sweating, I hear voices, I'm very unstable." R. 80.

The Court further adopts the parties' respective summations of the record evidence. See Pl. Br. at 2-9; Def. Br. at 5-13.

## IV. The ALJ's Decision

The ALJ found that Morell last met the insured status requirements of the Social Security Act on December 31, 2023 (the "DLI"). R. 22. At step one, the ALJ determined that Morell had

not engaged in any substantial gainful activity between the alleged onset date ("AOD") of July 25, 2018, and the DLI. Id.

At step two, the ALJ found that Morell had the following severe impairments during the relevant period between the AOD and DLI: "type II diabetes mellitus with neuropathy, hypertension, and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c))." Id. The ALJ also found medically determinable impairments of "hyperlipidemia, gastroesophageal reflux disease (GERD), pancreatitis, hemorrhoids, obstructive sleep apnea (OSA), depression, anxiety, osteoarthrosis, and intermittent claudication," but ultimately determined that these were non-severe. Id.

At step three, the ALJ determined that Morell's impairments or any combination thereof did not meet or medically equal the severity of a listed impairment in the applicable regulations ("listings"). R. 15; see 20 C.F.R. Pts. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. Specifically, the ALJ found the requirements of listings 1.15, 1.18, 9.00, 11.14, 4.00[2] were not met or medically equaled. R. 25-26.

The ALJ established Morell's RFC. R. 26. He found that Morell possessed the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that he can "can do occasional balancing, on uneven terrain, but is not limited in ability to maintain balance on even terrain. He can do occasional stooping, crouching, kneeling, crawling, and climbing of ramps and stairs; but no climbing of ladders, ropes or scaffolds." Id. At step four, the ALJ found that Morell had past relevant work as a truck driver, noting that the "vocational expert testified that this work had a medium exertional level . . . ." R. 32. The ALJ found that the

---

[2] Respectively: "disorder of the skeletal spine resulting in compromise of the nerve root," "abnormality of a major joint in any extremity," "endocrine disorders," "peripheral neuropathy," and disorders of the "cardiovascular system."

demands of that role exceeded Morell's RFC, and that he is thus unable to perform his past relevant work. Id.

At step five, the ALJ concluded that, through the DLI, there were jobs existing in significant numbers in the national economy that Morell could perform. Id. In reaching this conclusion, the ALJ relied upon the testimony of a vocational expert, who opined that an individual with Morell's RFC would be able to work as a cafeteria attendant, cleaner, or assembler of small products, with 28,100, 219,700, and 19,400 jobs existing in the national economy, respectively. R. 33, 85-86.

Because the ALJ found Morell was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, he concluded that Morell was not disabled through the DLI. R. 33.

## DISCUSSION

**I.      Standard of Review**

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside only if it is based upon legal error, or it is not supported by substantial evidence. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cr. 1998)).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact supported by substantial evidence are conclusive. Diaz v.

Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). Therefore, if substantial evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." (emphasis in original) (citations and internal quotation marks omitted)). Although deferential to an ALJ's findings, a disability determination must be reversed or remanded if it contains legal error or is not supported by "substantial evidence." See Rosa, 168 F.3d at 77.

**II.    Definition of Disability**

A claimant is disabled under the Act if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). A claimant will be found to be disabled only if their "impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. § 423(d)(2)(A).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 404.1520. The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. See id. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1 . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof as to steps one, two, three, and four; the Commissioner bears the burden as to step five. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

### III. Analysis

Morell argues that the ALJ erred by improperly weighing the medical opinion evidence when determining his RFC, improperly finding at Step Two that his mental impairments were non-severe, and by improperly discrediting his testimony concerning the intensity, persistence, and limiting effects of his symptoms. Pl. Br. at 10, 17, 23.

#### A. The ALJ's RFC Determination

Because Plaintiff's DIB application was filed after March 27, 2017, revised regulations guided the ALJ's analysis. See 20 C.F.R. § 404.1520c. When considering medical opinions and

11

prior administrative medical findings under these new regulations, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight" to any of those opinions.³ Id. § 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of an opinion provided by medical sources based on the opinion's "supportability," its "consistency," the "relationship" of the medical source and the claimant, the source's "specialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." Id. § 404.1520c(1)-(5).

The most important factors are supportability and consistency; "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support" their opinion, and the more consistent a medical opinion or prior administrative medical finding is with "the evidence from other medical sources and nonmedical sources" in the claim, the more persuasive the opinion or finding. Id. §§ 404.1520c(b)(2), (c)(1), (c)(2). The ALJ must address how they considered the supportability and consistency factors but need not discuss the other three. Id. § 404.1520c(b)(2). Plaintiffs bear the burden of proving that a more restrictive RFC is appropriate. Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018).

The ALJ properly considered the supportability and consistency of the opinion before finding Dr. Kezerashvili's assessment of Morell's ability to work "not persuasive." R. 31. The ALJ found the opinion to be poorly supported by record evidence, particularly Dr. Schwartz's physical exam, which revealed relatively minor limitations. The ALJ also found the opinion to be internally inconsistent where it described extreme limitations but also describe Morell as "stable and mildly symptomatic." R. 1172. Finally, the ALJ noted that at the time the opinion was

---

³ The new regulations also differ from the previous rules in that the definition of "acceptable medical sources" is expanded. 20 C.F.R. § 404.1502(a).

written, Dr. Kezerashvili had not seen Morell for nearly two years, further reducing its relevancy. R. 31.

The ALJ's finding that Dr. Schwarz's opinion was persuasive is similarly free from error. The ALJ cited to multiple other normal physical exams in the record that were consistent with Dr. Schwarz's observations and supported mild limitations to Morell's ability to perform light work.

Finally, beyond advocating for the validity of Dr. Kezerashvili's opinion, Morell has not attempted to establish that a more restrictive RFC is appropriate. He fails to cite to any specific evidence that supports his implicit contention that he is not capable of performing at the RFC established by the ALJ. This fact alone could constitute substantial evidence supporting a denial of benefits. Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

The ALJ thoroughly and accurately summarized Morell's medical records and adequately explained her reasoning behind the weight afforded to each medical opinion. Accordingly, her RFC determination was free from legal error and supported by substantial evidence.

### B. Morell's Mental Impairments

An alleged impairment will be considered severe only where "it significantly limits an individual's physical or mental abilities to do basic work activities." Clark v. Saul, 444 F. Supp. 3d 607, 622 (S.D.N.Y. 2020) (quoting SSR 96-3P, 1996 WL 374181); see also 20 C.F.R. §§ 404.1520(c), 416.1520(c). "A non-severe impairment is one that is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do

basic work activities." Id. (internal quotation marks omitted). "If the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

"The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." Clark, 444 F. Supp. 3d 623 (quoting Taylor v. Astrue, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)). Accordingly, "a finding of not severe should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work[.]'" Id. (quoting Rosario v. Apfel, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)).

The ALJ's conclusion that Morell's depression and anxiety were non-severe limitations was adequately explained and is supported by the record. See R. 23. Morell received treatment for both and showed improved symptoms. Moreover, the treatment Morell received was conservative, with many of Dr. Alcantara's notes recounting standard counseling regarding coping mechanisms as well as offering emotional support. See, e.g., R. 1467.

### C. Morell's Testimony

It is the ALJ's role to evaluate a claimant's credibility and to decide whether to discredit a claimant's subjective estimate of the degree of his impairment. Tejada, 167 F.3d at 775-76; see also 20 C.F.R. § 404.1529(b) (dictating that an individual's subjective complaints alone do not constitute conclusive evidence of a disability). In making a credibility determination, if a claimant alleges symptoms of greater severity than established by the objective medical findings, "[t]he ALJ's decision must 'contain specific reasons for the finding on credibility, supported by

the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" Watson v. Berryhill, 732 F. App'x 48, 52 (2d Cir. 2018) (quoting SSR 96-7p, 1996 WL 374186, at *2). "[C]ourts must 'defer to an ALJ's decision to discredit subjective complaints if the decision is supported by substantial evidence.'" Dorta v. Saul, No. 19-cv-2215 (JGK)(RWL), 2020 WL 6269833, at *8 (S.D.N.Y. October 26, 2020) (quoting Watson, 732 F. App'x at 52).

The ALJ adequately explained her reasons for discounting Morell's testimony about the intensity, persistence, and limiting effects of his symptoms because it was inconsistent with the record evidence, which showed that most of the conditions alleged were mild and that Morell's physical exams were overwhelmingly normal. R. 27. In reaching this conclusion, the ALJ thoroughly summarized the medical evidence, which was inconsistent with Morell's testimony. R. 27-32. For example, Morell's claims of a total inability to reach overhead, near-constant 9/10 pain, and hearing voices all lack credibility because they have no support in the medical record, and are in fact directly contradicted by it. R. 77, 79, 80.

The ALJ makes abundant citations to the record that serve to make clear to Morell and this Court both the weight given to his testimony and the reasons for that weight. R. 27-32; see Watson, 732 F. App'x at 52. Therefore, the ALJ's decision to discount Morell's hearing testimony was supported by substantial evidence and free from legal error.

## CONCLUSION

Morell's motion is DENIED, and the Commissioner's motion is GRANTED. The action is DISMISSED with prejudice. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 23 and 27.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     August 21, 2023
           New York, New York